UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TEMPUR-PEDIC NORTH AMERICA, LLC,
TEMPUR-PEDIC MANAGEMENT, LLC,
and DAN-FOAM APS,

                                           CASE NO.: 8:18-CV-02147-VMC-SPF

      Plaintiffs,

v.

MATTRESS FIRM, INC., THER-A-PEDIC
ASSOCIATES, INC., SINOMAX GROUP
LIMITED, and SINOMAX USA INC.,

      Defendants,

_____/

## MOTION TO TRANSFER CASE UNDER FIRST-FILED RULE, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404 (With Incorporated Memorandum of Law and Local Rule 3.01(g) Certificate)

Defendant, MATTRESS FIRM, INC. ("Defendant" or "Mattress Firm") moves to

transfer this case pursuant to the First-Filed doctrine, or in the alternative to transfer this case,

pursuant to 28 U.S.C. § 1404, to the United States District Court for the Southern District of

Texas (Houston Division),[1] and for expedited consideration of same,[2] and states:

---

[1]   Mattress Firm understands that the other defendants will join or not oppose this Motion to Transfer Venue to the Southern District of Texas.

[2]   Concomitantly with the filing of this Motion, Mattress Firm will be filing a Motion seeking expedited consideration of this Motion to Transfer.

I.      **INTRODUCTION.**

In their opening salvo, Plaintiffs proclaim on the first page of their complaint that Mattress Firm is "***at it again***" and thus connect the instant case to the Texas Federal Case, as defined below. *See* Dkt. 1, (the "Complaint"), ¶ 1. Throughout the Complaint and other papers and pleadings filed by the Plaintiffs, Plaintiffs extensively refer to the Texas Federal Case, strongly implying that the conduct giving rise to the instant case violates orders entered in that case. The manner in which Plaintiffs themselves frame this dispute begs the question why Plaintiffs chose to bring the instant case in this jurisdiction rather than Texas. Whatever the reason, a close examination of the Plaintiffs' allegations, the relief sought by the Plaintiffs, and the Declaration submitted by Mattress Firm in support of this Motion proves that substantial overlap exists with the Texas Federal Case, which compels the transfer of the instant case to that court for appropriate determination regarding whether this case should be consolidated with the Texas Federal Case or should proceed separately in that District or in this Court.

As Plaintiffs admit, this is not the first case Plaintiffs Tempur-Pedic North America, LLC and Dan-Foam ApS (collectively, "Tempur-Pedic") filed against Mattress Firm alleging trademark infringement. Tempur-Pedic filed its first trademark infringement lawsuit against Mattress Firm on April 7, 2017 in the Houston Division of the Southern District of Texas, alleging that Mattress Firm violated the Lanham Act by infringing upon Tempur-Pedic's trademarks and goodwill, causing immediate and irreparable harm (defined below as the "Texas Federal Case"). *See generally*, Texas Federal Case, Dkt. No. 1, Plaintiffs' Original Complaint in Case No. 4:17-cv-01068 (the "Texas Federal Complaint"), attached as ***Exhibit***

*1*, at ¶¶ 1, 39-65. For the last sixteen months, the parties have pursued the resolution of their trademark dispute in the Texas Federal Case, conducting extensive discovery, taking numerous depositions and engaging in numerous and lengthy preliminary injunction proceedings.

Without question, the district judge and his staff in Texas have become familiar with the parties and their legal dispute, having ruled on *three* emergency applications for preliminary injunction from Tempur-Pedic. Along the way, the Texas Federal Court has ruled that Mattress Firm has the right to use the Tempur-Pedic trademarks in specific ways, but importantly, has also admonished the parties to meet and confer about any other trademark disputes relating to Mattress Firm's web page or other advertisements. *See Exhibit 2*, Texas Federal Case, Dkt. No. 70, Memorandum Opinion & Order, at pp. 25-26. Despite this order, and the fact that Tempur-Pedic had already availed itself of the Houston Texas forum, Tempur-Pedic filed this trademark infringement lawsuit in this Court against Defendant Mattress Firm, and others. Even a cursory review of Tempur-Pedic's pleadings in this case reflect copious overlap with the Texas Federal Case, and demonstrates that the Court should transfer this case under the First Filed Rule. Alternatively, the Court should transfer this case to the Southern District of Texas under 28 U.S.C. § 1404(a) as the majority of relevant factors favor that forum as the place where this dispute should be resolved concomitantly with Tempur-Pedic's other allegations of trademark infringement against Mattress Firm, especially since there is a danger of inconsistent and conflicting rulings from two courts of equal jurisdiction.

46350180;1

## II.     FACTUAL BACKGROUND.

### A.     Plaintiffs Trace the Origin of the Dispute That Resulted In the Filing of the Instant Case to the Dissolution of Their Business Relationship with Mattress Firm, Which Is Also The Genesis of The Texas Federal Case.

1.     For over twenty years, Plaintiffs allege that they did an extensive amount of business with Mattress Firm, the former number one authorized retailer of Tempur-Pedic products. *See* Complaint ¶¶ 38-39; Dkt. 10, Declaration of Richard W. Anderson ("Plaintiffs' Declaration"), ¶ 29.

2.     In 2017, Mattress Firm announced its intent to terminate its business relationship with the Plaintiffs and their affiliates. *See* Plaintiffs' Declaration ¶ 35. Before it could do so, Plaintiffs peremptorily terminated their agreements with Mattress Firm. *Id.* The dissolution of the business relationship ultimately spawned two lawsuits in Houston, Texas, the principal place of business of both Mattress Firm and the Plaintiffs' affiliated business entity, Sealy Mattress Company. Mattress Firm filed suit first on March 30, 2017 against Tempur-Pedic North America, LLC in state court, in Houston Texas, pending as Case No. 2017-22062 (the "Texas State Case"). *See Exhibit 3*, Dkt. 18-1 (pending docket for the Texas State Case as of August 31, 2018). Approximately one week later, on April 7, 2017, Tempur-Pedic North America, LLC and Dan Foam ApS sued Mattress Firm in the Houston Division of the United States District Court for the Southern District of Texas.  *See Exhibit 4*, Dkt. 18-2 (pending docket for the Texas Federal Case as of August 31, 2018). These suits remain pending.

3.     In the Texas Federal Case, Plaintiffs unsuccessfully sought to broadly enjoin Mattress Firm from using the "Tempur-Pedic" or "Tempur" names nationwide. The Texas

Federal Court denied that relief and ordered that Mattress Firm could continue to use the names "Tempur-Pedic" or "Tempur" on its website as long as certain restrictions were observed. *See* Exhibit 2.

> **B.      Plaintiffs Filed The Instant Suit to Stop Defendants from Launching a Competing Product.**

4.      To prevent Defendants from marketing and selling a new competing product line called the Therapedic Premier Collection, which is competitive with a product Plaintiffs allegedly debuted ***only a few months ago***, Plaintiffs seek the same broad relief from this Court that was previously denied by the Texas Federal Court: a nationwide injunction against Mattress Firm from "any use whatsoever of the Tempur-Pedic Brand." *See* Dkt. No. 8, Tempur-Pedic's Motion for Entry of Preliminary Injunction, at pp. 4-5.

5.      Plaintiffs claim they brought the instant case in this Court because Defendants are test marketing the Therapedic Premier Collection in the Tampa Bay area. More troublesome though is that Plaintiffs leave the false impression that the Texas Federal Court granted them broad injunctive relief when, in fact, the Texas Federal Court denied most of the preliminary injunctive relief Plaintiffs sought there. Specifically, the parties extensively litigated three "emergency" preliminary injunction applications which sought to prohibit Mattress Firm from using the Tempur-Pedic Brand in any manner – the exact relief sought here. Tellingly, the Texas Federal Court denied that relief, but one would not know that by reading Plaintiffs' pleadings in this Court. *See* Exhibit 2.

6.      Undaunted, on August 28, 2018, Plaintiffs sued in this Court, alleging that Mattress Firm is selling confusingly similar products with trade dress too similar to Plaintiffs' "Pro-Adapt Trade Dress" first shown at an industry trade show in January 2018.

46350180;1

*See* Complaint, ¶¶ 27, 70. Plaintiffs allege that Mattress Firm is selling its allegedly infringing products nationwide through its website. *See* Complaint, ¶¶ 67, 69. The only alleged connection to this District, however, is the allegation that some Mattress Firm retail stores are being used as a test-market for the allegedly infringing products over Labor Day weekend. *See* Complaint, ¶¶ 68-69.

7.    Mattress Firm's headquarters (euphemistically called the "Bedquarters") is located in Houston, Texas.  *Id.* at ¶ 2; *See* Declaration of Scott Thaler, dated September 10, 2018, attached as ***Exhibit 5***, (the "Declaration") ¶¶ 4, 9.

**C.    None of the Parties are Incorporated or Principally Based in this District, or Even this State and the Key Witnesses and Evidence are not in Florida.**

8.    Mattress Firm is a Delaware corporation with its principal place of business in Houston, Texas. See Declaration at ¶ 4. The Mattress Firm employees involved in the design of the products at issue in this case, the Therapedic Premier Collection, did so at the "Bedquarters" in Houston, Texas, and are currently located in Houston, Texas. *Id.* at ¶¶ 7-8. The records reflecting Mattress Firm's involvement in the design, development, approval, planning, and marketing of the Therapedic Premier Collection are located at the "Bedquarters" in Houston, Texas.  *Id.* at ¶ 8.

9.    Additionally, the other Defendants joined in this action are not Florida business entities and are not principally based in either this District or the state of Florida. Defendant Ther-A-Pedic Associates, Inc., is a New Jersey corporation with a principal place of business in Princeton, New Jersey. See Complaint, ¶ 8. Defendant Sinomax Group Limited is a Chinese corporation with a principal place of business in Kowloon Bay,

Kowloon, Hong Kong. See Complaint, ¶ 10. Defendant Sinomax USA Inc. is a Delaware corporation with a principal place of business in Houston, Texas.   Complaint at ¶ 9; Declaration at ¶ 9.

10.     Similarly, Plaintiffs are also not Florida business entities and are not principally based in either this District or the state of Florida. Plaintiff Tempur-Pedic North America, LLC is a Delaware limited liability company with a principal place of business in Lexington, Kentucky. *See* Complaint, ¶ 3. Plaintiff Tempur-Pedic Management, LLC is a Delaware limited liability company with a principal place of business in Lexington, Kentucky. *See* Complaint, ¶ 4. Plaintiff Dan-Foam ApS is a Danish corporation with a principal place of business in Denmark. *See* Complaint, ¶ 5. Plaintiffs Tempur-Pedic North America, LLC, Tempur-Pedic Management, LLC, and Dan Foam ApS, are all wholly owned subsidiaries of Tempur Sealy International, Inc., a Delaware corporation with its principal place of business in Lexington, Kentucky, whose securities are publicly traded. *See* Complaint, ¶ 6.  Notably, and in support of its intimal request for a Temporary Restraining Order, Plaintiffs filed the Declaration of Richard W. Anderson, the Executive Vice President & President of North America for Tempur Sealy International, Inc., the parent company of all the Plaintiffs. *See* Dkt. 10, ¶¶ 1-2. Mr. Anderson, who presumably resides in Lexington, Kentucky, will be a key witness for Plaintiffs. Notably, the photographs of the Plaintiffs' products attached to Mr. Anderson's Declaration appear to have been taken either in Aiea, Hawaii or Lexington, Kentucky - not in Florida.  In short, Plaintiffs lack any meaningful connection to this judicial district as well.

11.     Because substantial overlap exists between the instant case and the first-filed Texas Federal Case (as reflected in Plaintiffs' own pleadings), and because the Southern District of Texas is a more convenient district for this matter to be adjudicated, Mattress Firm requests the Court transfer this case to the Southern District of Texas pursuant to the First Filed Rule or alternatively pursuant to 28 U.S.C. § 1404(a).

## MEMORANDUM OF LAW

### III.     THE COURT SHOULD TRANSFER THIS CASE UNDER THE "FIRST FILED" DOCTRINE.

"Where actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (also noting that "the first-filed rule 'should not be disregarded lightly'"). "The first filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013); *Martin v. Akers Bioscience, Inc.*, No. 8:14-cv-2835-T-33TGW, 2014 WL 7225412 at *3 (M.D. Fla. Dec. 17, 2014) (Covington, J.); *AAMP of Florida, Inc. v. Audionics System, Inc.*, No. 8:12–cv–2922–T–33TGW, 2013 WL 1104889, at *2 (M.D. Fla. Mar. 18, 2013) (Covington, J.). Though some courts call this a "rule," it is a discretionary doctrine resting on principles of comity and sound judicial administration, which is designed to avoid the waste of duplication, encroachment upon the authority of sister courts, and piecemeal resolution of issues that call for a uniform result. *Martin*, 2014 WL 7225412, at *3; *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).

Three considerations guide the doctrine's application: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1173-74 (11th Cir. 1982); *Catermefit, Inc. v. Catereed Fit Corp.*, No. 8:15-cv-326T-17MAP, 2015 WL 12844285, at *1 (M.D. Fla. Apr. 16, 2015) (Pizzo, M.J.) (citing *Groom v. Bank of America*, No. 8:08-cv-2567-T-27EAJ, 2010 WL 627564 (M.D. Fla. Feb. 23, 2010) (Whittemore, J.)).

"The 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred or consolidated.'" *Martin*, 2014 WL 7225412, at *3 (citing *Cadle Co.*, 174 F.3d at 606). Courts applying the rule generally agree that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Id.* (quoting *Cadle*, 174 F.3d at 606 and *Perkins v. Am. Nat. Ins. Co.*, 446 F. Supp. 2d 1350, 1353 (M.D. Ga. 2006) ("[U]nder the 'first-filed rule,' the court where the subsequently filed action has been filed should defer to the court where the first action was filed to allow that court to decide whether it should exercise jurisdiction over both cases in a consolidated action.")).

Once the court with the second filed action determines that a likelihood of substantial overlap exists between two suits, "it is no longer up to the second filed court to resolve the question of whether both should be allowed to proceed." *Martin*, 2014 WL 7225412, at *4 (citing *Cadle*, 174 F.3d at 606 and *Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)); *AAMP of Fla. Inc.*, 2013 WL 1104889, at *2-3 (stating that "even if this Court were inclined to agree with AAMP that the [patent dispute] case should be tried here, 'it has no

authority to mandate this result'", and transferring case to first-filed court under 28 U.S.C. § 1404(a)). Instead, the proper course of action is for the Court to transfer the case to the first-filed court to determine which case should, in the interests of judicial economy, proceed. *Id.*

Based on the pleadings and submissions in the instant case and the Texas Federal Case, there is a "likelihood of substantial overlap" between the two suits so as to compel transfer so that the Texas Federal Court can properly determine whether the First Filed Rule applies and whether, to what extent, and where the instant case should proceed. Unquestionably, there are substantial similarities between the identity of the parties[3] and the issues presented in the Texas Federal Case and this proceeding. Both cases concern the same subject matter, the alleged infringement of Tempur-Pedic's marks, and raise the same issues, namely whether Mattress Firm is infringing those marks, whether Mattress Firm is improperly marketing its products and whether Mattress Firm has confused consumers and consequently diverted sales from Tempur-Pedic. And there can be no reasonable dispute that venue over this case would exist in the Southern District of Texas, inasmuch as (1) Mattress Firm is headquartered there; (2) many of the key witnesses with personal knowledge of the decisions Tempur-Pedic is suing about reside there; and most importantly (3) Tempur-Pedic has already judicially admitted that the Texas court has personal jurisdiction over the parties, and venue is proper there. *See* Texas Federal Complaint at ¶¶ 8, 10.

---

[3] While the parties here and in the Texas Federal Case are not identical, complete overlap of the parties is not required for the First Filed rule to apply. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("The rule does not ... require that cases be identical[;] [instead,] [t]he crucial inquiry is one of 'substantial overlap.' "); *Lexington Ins. Co. v. Proformance Plastering of Pensacola, Inc.*, No. 6:13-CV-904-ORL-22-TBS, 2013 WL 12155502, at *1 (M.D. Fla. Oct. 9, 2013) (Conway, J.). ("[the parties and issues in the first lawsuit do not have to be identical to those in the second.").

In fact, this case presents an even stronger basis upon which to employ the First Filed doctrine than in most cases in which the issue arises, since (a) Tempur-Pedic itself was the party who initiated the first filed federal case in Texas; (b) Tempur-Pedic admits in this case that its claims stem, in part, from alleged conduct that Tempur-Pedic believes to violate a preliminary injunction in the Texas Federal Case; and (c) the preliminary injunction Tempur-Pedic seeks in this case, in part, would constitute a second bite at the apple Tempur-Pedic unsuccessfully sought in the Texas Federal Court. Specific to this last point, Tempur-Pedic's Tampa Case pleadings extensively reference the Texas Federal Case, the Court's injunction issued there, and imply that Tempur-Pedic's trademark infringement claims in this case stem from a violation of the Texas Court's existing preliminary injunction:

> Tempur-Pedic brand at that time.  Instead, MF used the Tempur-Pedic brand on the MF website to sow confusion among consumers as to the ongoing connection between MF and Tempur.  By doing so, MF infringed the Tempur-Pedic trademark until it was preliminarily enjoined from doing so by a judge of the United States District Court for the Southern District of Texas (the "Texas Action") in July 2017.
>
>          Now, barely a year later, MF is back at it.  Teetering on the edge of bankruptcy, MF,

*See* Dkt. No. 9, Memorandum in Support of Application for Temporary Restraining Order and Preliminary Injunction, at p. 2. *See also* Complaint at ¶¶ 49-51.

Another fact that shows substantial overlap is the similarity of the injunctive relief Tempur-Pedic seeks in this case as compared to what it requested – but did not get – from the Texas Federal Court. In the Texas Federal Case, Tempur-Pedic requested a preliminary injunction against "Mattress Firm from utilizing or referencing the Tempur-Pedic® marks on

its website." The Texas Federal Court denied that request, and ordered that Mattress Firm could continue to use the names "Tempur-Pedic" or "Tempur" on the Mattress Firm website as long as certain restrictions were observed. *See* Exhibit 2, at pp. 25-26. After failing to convince the Texas Federal Court to preclude all uses of the Tempur-Pedic Marks, when Mattress Firm started selling the competing Therapedic Premier Collection, Plaintiffs instead filed this suit and seek substantially similar relief that the Texas Court already denied. Specifically, in its Motion for Entry of Preliminary Injunction in the instant case, Tempur-Pedic requests an injunction against all Defendants from "making any use whatsoever of the Tempur-Pedic Brand (as that term is defined in the Supporting Documentation) or any other trade names, trademarks, or trade dress that are likely to cause confusion with the Tempur-Pedic Brand …" *Compare **Exhibit 6**,* Dkt. No. 35 in the Texas Federal Case, Tempur-Pedic's Memorandum in Support of its Second Emergency Request for Preliminary Injunction, at p. 25 and ***Exhibit 2***, Memorandum Opinion & Order, at p. 25-26 with Dkt. No. 8, Tempur-Pedic's Motion for Entry of Preliminary Injunction, at pp. 4-5. Admittedly, the alleged conduct which Tempur-Pedic has made the subject of this case – the sale of Therapedic® branded mattresses that Tempur-Pedic believes look too similar to Tempur-Pedic's products – is not on all fours with the issues in the Texas Federal Case. However, both cases nevertheless overlap substantially, because both cases involve disputes between many of the same parties in which one party claims its trademarks, goodwill and intellectual property are being misused by the other, and Tempur-Pedic seeks substantially similar – but potentially inconsistent – relief in both cases.

In *Martin*, this Court employed the First Filed rule in a royalty dispute and found that a federal district court in New York was the appropriate court to decide whether "(1) the Florida Action should be allowed to proceed, or whether it should be consolidated with the New York Action, and (2) whether this Court or the U.S. District Court for the Southern District of New York is the appropriate venue to resolve this dispute." *Martin*, 2014 WL 7225412, at *4. In *Martin*, the New York action predated the Tampa case by just a few hours, but the Court still properly exercised its discretion to allow the New York court to decide the issues, and stayed the Tampa case. *Id.* (citing *Kate Aspen, Inc. v. Fashioncraft–Excello, Inc*., 370 F. Supp. 2d 1333, 1338–39 (N. D. Ga. 2005) (staying action pending decision of the U.S. District Court for the Southern District of New York's determination as to whether or not the First Filed rule should apply to the case and to the related litigation in the Southern District of New York)). And while the First Filed Rule usually arises when two parties have simultaneously raced to their local courthouse, it is not limited to situations in which parallel litigation is filed by each side. Indeed, in the *Cadle* case upon which this Court relied in *Martin,* the same party filed both the suits. *Cadle*, 174 F.3d at 600-02; *see also Groom*, 2010 WL 627564 at *1 (staying second filed action by same plaintiffs who earlier filed similar action).

Given these facts, the Court should proceed as it did in *Martin* and *AAMP of Florida* and transfer or stay this case to allow the Texas District Court to decide whether (1) this case should be allowed to proceed, or whether it should be consolidated with the Texas Action, and (2) this Court or the U.S. District Court for the Southern District of Texas is the appropriate venue to resolve this dispute. *Martin*, 2014 WL 7225412, at *4. And, because the

Court has set Tempur-Pedic's Application for Preliminary Injunction for hearing on September 25, 2018, Mattress Firm requests the Court to rule on this Motion on an expedited basis to preserve judicial resources and potentially prevent an outcome in conflict with orders entered by the Court in the Texas Federal Case. *See* note 2*, supra.*

## IV.    <u>THE COURT SHOULD TRANSFER THIS CASE UNDER 28 U.S.C. § 1404.</u>

Alternatively, Mattress Firm requests the Court to transfer this case to the Houston Division of the Southern District of Texas under 28 U.S.C. § 1404(a). Section 1404(a) gives this Court the discretion to transfer this case to a district where "[the case] might have been brought" for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."). *See also Proformance Plastering*, 2013 WL 12155502, at *4 (although concluding that substantial overlap did not exist to justify transfer under the First-Filed rule, transfer pursuant to Section 1404 was appropriate because the first court had a "greater interest in the litigation as it has been developing in that district for several years" and while two cases were not so related as to trigger the First Filed Rule, they "share some questions of law and fact" and consideration of the two cases in tandem would more comprehensively resolve the disputes rather than deciding the cases separately.) "Congress authorized courts to transfer the venue of a case in order to avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money." *American Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc*., 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999).

**A.**     <u>**This Suit Could Have Been Brought In The Southern District of Texas.**</u>

The threshold question under section 1404(a) requires the court to determine whether the case could have been brought in the forum to which transfer is sought. 28 U.S.C. § 1404(a). An action might have been brought in a proposed transferee court if: (1) the court has jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process." *Suomen Colorize Oy v. DISH Network, LLC*, 801 F. Supp. 2d 1334, 1337 (M.D. Fla. 2011); *Seal Shield, LLC v. Otter Prods., LLC*, No. 6:13-cv-967, 2013 WL 6017330, at *2 (M.D. Fla. Nov. 13, 2013); *Brandywine Communs. Techs. v. AT&T Corp.*, No. 6:12-cv-283, 2012 WL 1658810, at *3 (M.D. Fla. Apr. 25, 2012).

Here, there can be no dispute that Tempur-Pedic "could have brought" this case in the Southern District of Texas, since it is currently litigating against Mattress Firm there and has judicially admitted that venue and personal jurisdiction exists there. Texas Federal Complaint at ¶¶ 9-10. Accordingly, the only analysis for this Court to conduct is to determine whether the 1404(a) factors weigh in favor of a transfer to Texas. As shown below, they unquestionably do.

**B.**     <u>**The Relevant Considerations Support Transfer, Both to Serve the Convenience of the Parties and Witnesses, and to Promote the Interests of Justice.**</u>

The Eleventh Circuit has identified nine factors the Court should consider when determining whether a balancing of the convenience of the parties and the interest of justice favors transfer under Section 1404(a):

(1)   convenience of the witnesses;
(2)   location of documents and relative ease of access to sources of proof;
(3)   convenience of the parties;
(4)   locus of operative facts;

(5)   availability of process to compel the attendance of unwilling witnesses;
(6)   relative means of the parties;
(7)   a forum's familiarity with the governing law;
(8)   weight accorded a plaintiff's choice of forum; and
(9)   trial efficiency and the interests of justice, based on the totality of the circumstances.

*Fresh Patch, LLC v. Youn*, No. 8:13-CV-2602-SDM-AEP, 2014 WL 3720448, at *1 (M.D. Fla. July 25, 2014) (Merryday, J.) (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135, n.1 (11th Cir. 2005)).

As explained factor-by-factor below, consideration of these public and private interest factors strongly favors transferring this case to the Southern District of Texas. Texas is the "center of gravity" for this case and is where Mattress Firm and most of the witnesses and evidence are located. And because none of the Plaintiffs are at home in this forum, Plaintiffs' choice of forum is entitled to only minimal deference. Therefore, transfer to the Southern District of Texas is appropriate. *See Rothschild Digital Media Innovations, LLC v. Sony Computer Entm't Am. LLC*, No. 14-22134-CIV, 2014 WL 12029271, at *2 (S.D. Fla. Aug. 28, 2014) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.")).

1.   The Convenience of the Witnesses Strongly Favors Transfer.

The Middle District of Florida "gives great weight to the convenience of the parties." *Suomen*, 801 F. Supp. 2d at 1338; *Brandywine Communs. Techs., LLC v. Cisco Sys., Inc.*, No. 6:11-cv-1843-Orl-36DAB, 2012 WL 8281188, at *3-5 (M.D. Fla. Mar. 26, 2012); *see also Reward Systems, L.C. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1340 (M.D. Fla. 2002).

However, it is equally "well-established . . . that the majority of the witnesses in a patent infringement case originate with the defendant," and that the bulk of the relevant evidence usually comes from the accused infringer. *Brandywine,* 2012 WL 8281188, at *3-5. Where the majority of potential witnesses with relevant knowledge of the accused product are located in another district, this factor favors transfer. *Id.*

In the case at bar, virtually all of the key witnesses in this case knowledgeable about the design, development, marketing, and sale of the allegedly infringing products reside in Houston, Texas.  *See* Declaration, ¶ 7 (explaining that the key Mattress Firm employees with knowledge of the issues in this case are all located in Houston, Texas). Mattress Firm has identified from its side the following key witnesses for the issues in this case:

| Witness Name | Title or Role at Mattress Firm, Inc. |
|---|---|
| Steve Stagner | Chairman/CEO |
| Scott Thaler | Chief Marketing Officer |
| Dave Brummett | Sr. Vice President - Merchandising |
| Jody Putnam | Divisional President |
| Kristen Gullo | Vice President of Learning & Development |
| Morgan Camp | Curriculum Design Specialist |
| Bethanie Mackintosh | Senior Manager Education Design |
| Christy Sherrick | Vice President of Marketing |
| Kelly Shannon | Director of Product Marketing |

Declaration, ¶ 7. It would be far more convenient, and far less costly, to obtain these witnesses' attendance if this case were tried in the Southern District of Texas, where Plaintiffs have already teed up their trademark infringement battle. Indeed, the extended relocation to Florida for trial of many of Mattress Firm's witnesses would impose a substantial strain upon, and disruption to, Mattress Firm's ongoing business efforts. Declaration, ¶ 10. Given that the vast majority of key witnesses in this case are either based in Houston or in closer proximity to Houston than to Florida, this factor weighs heavily in

46350180;1

favor of granting transfer. *See Brandywine*, 2012 WL 8281188, at *3-5; *Suomen*, 801 F. Supp. 2d at 1338-1339.

> 2. The Location of Relevant Documents, Sources of Proof and Physical Evidence Favors Transfer.

Nearly all of the sources of proof in this case reside in the Southern District of Texas or in Lexington, Kentucky; and not one party resides in or has a principal place of business in Florida. See Complaint at ¶¶ 3-10; and Declaration, ¶ 8 (explaining that the location of the records at issue would be in Houston, Texas). None of the currently identified records are maintained in Tampa, Florida, which is also a significant consideration. *See Markowitz v. Miller Brewing, Co.*, No. SA-06-CA-0550-WRF, 2006 WL 3327648, at *6 (W.D. Tex. Oct. 25, 2006) (transferring venue to Milwaukee where, among other things, no evidence existed in Texas and finding "[m]ore significant than the location of evidence in Milwaukee, is the complete absence of evidence located in San Antonio."); *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) ("This factor examines the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial.").  And, perhaps most importantly, the prototype mattresses alleged to be infringing on Plaintiffs' marks, as well as the models upon which Mattress Firm designed the Therapedic Premier collection finds its genesis, are located in Houston as well. Declaration, ¶ 8.

> 3. The Convenience of the Parties Strongly Favors Transfer.

The party convenience factor favors transfer. As Tempur-Pedic admits, not one party to this case has any meaningful connection to this district. Plaintiffs are all Delaware entities with their principal places of business in Lexington, Kentucky, with the exception of Dan

Foam (a Danish corporation with a principal place of business in Denmark). Complaint at ¶¶ 3-6. Therapedic is a New Jersey corporation with its principal place of business there. *Id.* at ¶ 8. Sino-CH is alleged to be a Chinese company with a principal place of business in Hong Kong. *Id.* at ¶ 10. Both Mattress Firm and Sino-US are Delaware corporations with their principal places of business in Houston. *Id.* at ¶¶ 7, 9; Declaration, ¶¶ 4, 8. As to both companies, corporate policy is made in Houston and the primary decision makers who designed the allegedly infringing bedding products, and the architects of the materials used to market the allegedly infringing products, all reside in Houston. Declaration, ¶ 7. Because none of the parties are headquartered within this District, or even within Florida, but the key Defendants have headquarters in Houston, Texas, where the decisions at issue, key witnesses, and physical evidence are all located, the convenience of the parties strongly favors transfer.

    4. <u>The Locus of Operative Facts Favors Transfer.</u>

  "Typically, the locus of operative facts in intellectual property infringement cases is where the 'allegedly infringing product was designed, developed, and produced.'" *Seal Shield, LLC*, 2013 WL 6017330, at *3 (granting motion to transfer to venue to district where allegedly infringing product was created, developed, and marketed). Here, the allegedly infringing product and marketing campaign was designed, developed, and produced in Houston, Texas. *See* Declaration, ¶¶ 7-9. This factor warrants transfer.

  The only claimed connection to this District is the fact that some retail stores were used to test-market the allegedly infringing products over Labor Day weekend. Complaint at ¶¶ 68-69; Dkt. No. 7, *Pls.' Application for Temporary Restraining Order*, at p. 3. The Tampa test-market is immaterial because Plaintiffs also allege nationwide sales. *See Seal Shield,*

*LLC*, 2013 WL 6017330, at *3 ("The sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue.") (internal citation omitted); Complaint, ¶¶ 67, 69 (alleging that Mattress Firm is selling such products nationwide through its website). Moreover, this test marketing allegation is a tenuous connection to this District, since none of the parties, witnesses or sources of proof, reside in this District, or even in the state of Florida. While Mattress Firm admittedly employs some retail salespersons at its Tampa locations, these retail salespersons had no role in the design or development of the marketing campaign of the bedding products at issue in this case. Declaration, ¶ 7.

     5.   <u>The Transferee Court's Subpoena Power over Witnesses Favors Transfer.</u>

The key witnesses with personal knowledge of the reasons for the alleged decisions made the basis of Tempur-Pedic's claims are residents of Houston, where the mattresses and marketing campaigns at issue were conceived and designed. *See* Declaration, ¶ 7. Employees of the other co-defendants also reside outside of this District (in New Jersey, China or Houston, Texas). Even the witnesses to substantiate Plaintiff's alleged irreparable harm presumably reside outside of this district in Lexington, Kentucky since that is Plaintiff's principal place of business. Consequently, the availability of compulsory process for the attendance of witnesses does not favor continuing this suit in this district, since the key witnesses for the parties (and potentially non-parties) are outside the subpoena power of this Court. And, all known witnesses would have to travel a considerable distance to reach this District.

46350180;1

6.   The Cost of Attendance for Willing Witnesses Favors Transfer.

While the relative means of the parties may be neutral, the costs of attendance for willing witnesses will be reduced for all parties if this case is transferred to the Southern District of Texas. As described above, the Defendants to this lawsuit, their sources of proof, their business records, material physical evidence and the witnesses to the events made the basis of Plaintiff's claims, reside in Texas. And, for that matter, Plaintiffs' witnesses presumably reside in Lexington, Kentucky. Traveling from a multitude of states to arrive in Tampa, Florida is inconvenient for the witnesses and could result in significant travel expenses. Transferring this case to the Southern District of Texas will minimize those expenses since at least two defendants are headquartered there. And, most importantly, Tempur-Pedic cannot be heard to complain about the expense to travel to the Southern District of Texas, since it voluntarily selected that venue to file its first trademark dispute against Mattress Firm.

7.   The Familiarity of the Forum with the Applicable Law Favors Transfer.

Tempur-Pedic has already asserted trademark infringement claims against Mattress Firm, and the court in the Southern District of Texas has already spent the better part of sixteen months learning the case and making rulings on various overlapping issues. Texas law would be appropriate for Plaintiff's common law causes of action because any alleged infringement would have begun in Texas where the allegedly infringing products and marketing campaigns were conceived. *See* Restatement (Second) of Conflict of Laws § 145(1) ("[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most

significant relationship to the occurrence and the parties….").  The inclusion of a FDUTPA claim should not change the weight of this factor, because, as this Court has previously recognized, there is a divergence within Florida law regarding whether FDUTPA extends beyond Florida. *See Walgreens Co. v. Premier Products of America, Inc.*, No. 8:11-cv-812-T-33MAP, 2011 WL 4902985 (M.D. Fla. Oct. 14, 2011) (Covington, J.) (citing *Océ Printing Sys. v. Mailers Data Servs., Inc.*, 760 So. 2d 1037, 1042 (Fla. 2d DCA 2000) (reversing trial court order certifying FDUTPA class that included out-of-state residents, because FDUTPA was enacted to protect in-state consumers, and that the trial court's order certifying a nationwide class was contrary to "express statutory language")). But, even if Florida law may apply to a small portion of Plaintiff's claims, the Southern District of Texas is still the appropriate venue for this lawsuit because, "the possibility that the law of another jurisdiction governs the case is a factor accorded little weight on a motion to transfer, especially when no complex questions of foreign law are involved." *Foothill Capital Corp. v. Kidan*, No. 03 Civ. 3976 (RMB), 2004 WL 434412, at *4 (S.D.N.Y. Mar. 8, 2004); *Cypress/Spanish Fort I, L.P. v. Professional Services, Industries, Inc.*, 2010 WL 3766882, at *4 (N.D. Tex. Sept. 27, 2010). Indeed, "this factor is neutral when . . . the foreign law to be applied is not particularly complicated." *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1004 (E.D. Tex. 2009); *Action Industries, Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (holding that this factor is not particularly significant unless a party can show that courts in the alternate venue were "either unable or unwilling to apply [a different state's] law.").  Therefore this factor favors transfer, even though it is generally accorded lesser weight than others.

8. Plaintiffs' Choice of Forum is Entitled to Only Minimal Deference Because None of the Plaintiffs are at Home in this District.

Although plaintiff's choice of forum is a factor, where, as here, "a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper." *See Suomen*, 801 F. Supp. 2d at 1338 (internal citation omitted). Because this forum is not home to Plaintiffs, the Court should accord little weight to Plaintiffs' forum choice. *Soler v. Indymac Mortg. Services*, 14-CIV-22541, 2015 WL 3952620, at *3 (S.D. Fla. June 29, 2015) ("given the reduced deference to [Plaintiff]'s forum choice, the neutral factors above do not weigh against transfer, but instead, remain neutral.").

9. Trial Efficiency and the Interests of Justice Favor Transfer.

Financially, the Southern District of Texas is the appropriate forum to hear this case, as the main witnesses are located in Texas (and to a lesser extent, in Kentucky).[4] The vast majority of the alleged events relative to Plaintiffs' claims occurred entirely in Texas. Therefore, this factor weighs in favor of transfer of the suit to the Southern District of Texas, where the Defendants, records, certain physical evidence and witnesses are located.

Second, consolidation of this case with the Texas Federal Case is possible if this case is transferred. Even if this case is not consolidated with the Texas Federal Case, transfer would still permit this case to be heard by the same judge, who is already familiar with the

---

[4] *Xymogen, Inc. v. Digitalev, LLC*, No.: 617CV869ORL31KRS, 2018 WL 659723, at *3 (M.D. Fla. Feb. 1, 2018) ("Accordingly, because trademark infringement is deemed to take place in the location where the owner of the trademark resides, venue is proper here.").

primary parties and primary issues involved in this dispute. This would only increase the efficiency of the proceedings, weighing in favor of transfer.

Additionally, to the extent that this Court considers congestion as part of this factor in deciding motions to transfer, then it likewise favors transfer to the Southern District of Texas. The Judicial Business Report for 2017, which reports the median time interval in civil cases from filing to disposition in various judicial districts, is instructive. The latest data shows that the median time interval in civil cases from filing to disposition through trial in the Southern District of Texas is 22.6 months, while in the Middle District of Florida, it is 24.3 months. [*See Judicial Business of the United States Courts 2017*, Table C-5, found at: http://www.uscourts.gov/sites/default/files/data_tables/fjcs_c5_0331.2017.pdf (last visited on September 6, 2018)]. These statistics suggest that the civil dockets in the Southern District of Texas are slightly less congested than the civil dockets in the Middle District of Florida.

Finally, the burden of jury duty more appropriately falls upon the citizens of Texas, given that most Defendants reside in Texas, and the majority of the alleged events at issue occurred in Texas. The Southern District of Texas has a local interest in resolving this controversy because Mattress Firm has its principal place of business in Texas, and there is already one pending case there with substantial overlap, as set forth above. Accordingly, this suit should be transferred to the Southern District of Texas.

## V.    CONCLUSION.

This case is the latest filing in continuing litigation first-filed in Texas. And it too should be resolved in Texas. This litigation bears no meaningful relationship with this District. The Southern District of Texas, on the other hand, is where Mattress Firm maintains

its principal place of business, where the vast majority of the allegedly wrongful activity takes place or is directed from, where the majority of key witnesses are located, and where the primary parties are already litigating. For each of the reasons identified herein, Mattress Firm respectfully requests that this case be transferred to the Southern District of Texas.

<u>**Certification of Compliance with Local Rule 3.01(g)**</u>

Pursuant to Local Rule 3.01(g), undersigned counsel hereby certifies that they conferred with counsel for Plaintiffs, and Plaintiffs oppose the relief sought.  Undersigned counsel also conferred with counsel for the other defendants and certifies, without waiver of any defenses to jurisdiction, service of process or otherwise of the other defendants, that the other defendants do ***not*** oppose the relief sought in this Motion.  Mattress Firm anticipates that the other defendants may join in this Motion once properly served if they do not assert jurisdictional defenses.

Date: September 10, 2018.

Respectfully submitted,

*/s/ Irene A. Bassel Frick*
Richard H. Martin, Esq.
Florida Bar Number: 579831
Email: richard.martin@akerman.com
Irene Bassel Frick, Esq.
Florida Bar Number: 0158739
Email: Irene.basselfrick@akerman.com
Jason L. Margolin, Esq.
Florida Bar Number: 69881
Email: jason.margolin@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, FL 33602-5250
Phone: (813) 223-7333
Fax: (813) 223-2837
*Attorneys for the Defendant, MATTRESS FIRM, INC.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 10, 2018, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, who will provide electronic notification to all counsel of record.

*/s/ Irene A. Bassel Frick*
Attorney

46350180;1